# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **P.W.**

**No. 23-451** (Wood County CC-54-2019-JD-47)

## MEMORANDUM DECISION

Petitioner P.W., a juvenile adjudicated as a delinquent, appeals the Circuit Court of Wood County's June 26, 2023, dispositional order.[1] The petitioner argues that the circuit court erred in placing him in a residential treatment facility rather than in the custody of his parents. Upon our review, finding no substantial question of law and no prejudicial error, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21(c).

In August 2019, Petitioner P.W., then eleven years old, was placed in the custody of the West Virginia Bureau of Juvenile Services ("BJS") following a domestic incident with his father and grandmother. The circuit court held a detention hearing, and P.W. was returned to his parents' custody pending the filing of a petition. A delinquency petition was filed in September 2019, alleging two counts of domestic assault. At an adjudicatory hearing held in October 2019, P.W. admitted to one count of domestic assault, and the other count was dismissed. Based upon his admission, the court adjudicated P.W. as a delinquent child and transferred temporary custody of P.W. to what is now the Department of Human Services ("DHS") with instructions to place P.W. in a non-secure shelter pending the dispositional hearing.[2] While at the non-secure shelter, P.W. committed battery against a staff member, accumulated eleven days of school suspension, and ran away from the shelter. Accordingly, custody was transferred to the BJS, and P.W. was moved to a secure detention facility pending the dispositional hearing. While at the secure detention facility, the petitioner accumulated nine documented incidents of fighting and other disruptive behaviors. A diagnostic evaluation report recommended that P.W. enter a level III facility to work on anger management, aggressive behavior, and impulse control.

---

[1] The petitioner appears by counsel Courtney L. Ahlborn. The State of West Virginia appears by Attorney General John B. McCuskey and Assistant Attorney General Mary Beth Niday. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel. We use initials to protect the identity of juveniles involved in this case. *See* W. Va. R. App. P. 40(e).

[2] Since the filing of this appeal, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. *See* West Virginia Code § 5F-2-1a. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For the purpose of this appeal, the relevant agency is the Department of Human Services.

In December 2019, the court held a dispositional hearing, at which time the matter was continued to allow P.W. time to prove that he could be successful under community supervision. The court transferred custody back to P.W.'s parents and ordered that he be placed on probation and participate in Safe at Home services during his in-home placement. At a March 2020 hearing, the court found that P.W. was "in need of having prescribed for him a program of treatment and therapy and a program limiting his activities[.]"

After breaking his curfew and being uncooperative and defiant with law enforcement officers in April 2020, P.W.'s probation officer requested that P.W. be placed on an electronic monitoring system to ensure that he complied with the terms of his probation. Although P.W. was released from his electronic monitoring program in June 2020, he was again placed on the electronic monitoring system in July 2020 at the request of his probation officer. He was released from the program in October 2020.

In March 2021, P.W.'s probation officer filed a motion to modify the dispositional order. The probation officer alleged that P.W. had been absent from school without good cause for twenty-three full days and seven partial days, was physically aggressive and "kneed" his mother in the face, violated curfew on several occasions, disobeyed school authority figures, and was physically aggressive with other students at school. A hearing was held on the motion in April 2021, and P.W. admitted to all allegations except the incident against his mother. The circuit court continued custody of P.W. with his parents and extended his probation.

P.W. continued to exhibit aggressive and disruptive behaviors and, in May 2022, he was removed from his public middle school and placed in an alternative school to complete the remainder of the year. Then, in October 2022, P.W. was enrolled in a different alternative school; however, he was removed by the end of October due to making threats. Subsequently, in December 2022, P.W. started attending Evergreen Therapeutic Treatment Services ("Evergreen") but was unsuccessfully discharged due to his behaviors. Evergreen readmitted P.W. in February 2023, but he again was discharged less than two weeks later due to assaulting a staff member.

In May 2023, a second delinquency petition was filed against P.W., alleging that he had committed a new battery offense by striking a school administrator in the face and attempting to escape from a court bailiff during a hearing. P.W. admitted to both charges at his adjudicatory hearing, and the court transferred custody of P.W. to the BJS for placement in a secure detention facility. P.W. then underwent a psychological evaluation, and the evaluator recommended that P.W. receive alternative options for education and opined that he would not be successful in a traditional classroom.

The circuit court held a hearing on the probation officer's motion to modify and, by order entered on June 23, 2023, found that continuation in the home was contrary to P.W.'s best interests for several reasons, including that he had not been complying with the rules at school, made threats to school administration, was physically aggressive with a staff member of Evergreen, and was not staying in contact with his probation officer. The court further found that the DHS had made reasonable efforts to avoid P.W.'s removal from his home and had provided several services including probation supervision, a diagnostic evaluation, electronic monitoring, in-home services,

medication management, individual and group therapy services, non-secure shelter placement, shelter detention, mentoring services, services through Evergreen, and alternative schooling. Accordingly, the court ordered that custody of P.W. be vested with the DHS for placement at an appropriate residential treatment facility. P.W. now appeals.

"[T]he standard of review with regard to a circuit court's sentencing order or disposition [in a juvenile delinquency proceeding] . . . is whether the circuit court's ruling constitutes an abuse of discretion." *State v. Kenneth Y.*, 217 W. Va. 167, 170, 617 S.E.2d 517, 520 (2005) (citations omitted). "[D]iscretionary, dispositional decisions of the trial courts should only be reversed where they are not supported by the evidence or are wrong as a matter of law." *In re Thomas L.*, 204 W. Va. 501, 503, 513 S.E.2d 908, 910 (1998) (quoting *In the Matter of Willis Alvin M.*, 198 W.Va. 210, 215, 479 S.E.2d 871, 876 (1996) (internal quotations omitted)).

Without citing to the record or any supporting legal authority, the petitioner raises only one assignment of error—that the circuit court abused its discretion by placing him in a residential treatment facility rather than with his parents, which he claims would have been the least restrictive alternative under the circumstances.

West Virginia Code § 49-4-714(b)(6) provides, in relevant part that, when deciding the disposition of a juvenile adjudicated as a delinquent, "[t]he court shall make all reasonable efforts to place the juvenile in the least restrictive alternative appropriate to the needs of the juvenile and the community[.]" Further, we have held as follows:

> In considering the least restrictive dispositional alternative for sentencing a juvenile, a juvenile court must consider the reasonable prospects for rehabilitation of the child as they appear at the time of the dispositional hearing, with due weight given to any improvement in the child's behavior between the time the offense was committed and the time sentence is passed.

Syl. Pt. 3, *State ex rel. S.J.C. v. Fox*, 165 W. Va. 314, 268 S.E.2d 56 (1980). Based on our review of the record on appeal, we conclude that the circuit court did not abuse its discretion in placing P.W. in a residential treatment facility, and the record clearly reflects this is the least restrictive placement to meet P.W.'s needs. Indeed, the circuit court offered P.W. opportunity after opportunity to correct and improve his behavior, including in-home services, electronic monitoring services, probation supervision, and alternative education. However, P.W. continued to have issues with truancy and aggressive behaviors, failed to comply with rules at school, made threats to school administration, and failed to stay in contact with his probation officer. P.W. also ran away from his non-secure detention facility, was twice unsuccessfully discharged from services at Evergreen, and assaulted a school staff member, resulting in the filing of a second delinquency petition nearly four years after services were first initiated. Moreover, the results of P.W.'s psychological evaluation indicated that P.W. needed alternative options for education as he was unlikely to be successful in a traditional classroom setting. Given the foregoing, we find that the circuit court did not abuse its discretion in finding that P.W.'s best interests required placement in a residential treatment facility.

For the foregoing reasons, we affirm.

3

Affirmed.

**ISSUED:** April 22, 2025

**CONCURRED IN BY:**

Chief Justice William R. Wooton
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn
Justice Charles S. Trump IV

4